W. W. WITTE, Appellant,

v.

Dr. F. J. SEBASTIAN et al., Appellees.

No. 6344.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 30, 1953.

Mayer & Mayer, Dallas, for appellant.

Dick P. Wood, Johannes & Kelsoe, Dallas, for appellees.

PITTS, Chief Justice.

This is a suit for declaratory judgment seeking to have a proper construction given certain recorded building restrictions affecting a tract of land designated as Royal Crest Addition in the City of Dallas, Texas. Appellant, W. W. Witte, filed this suit against appellees, Dr. F. J. Sebastian and Mrs. Mary Jane Chambers, together with 25 other named defendants, alleging himself to be the owner of a portion of land in the said Addition and that each named defendant was likewise an owner of a portion of land, respectively, in the said Addition, and seeking to sustain his proposal to divide his "Lot 1 in Block 1–5500 of Royal Crest Addition in the City of Dallas" into three separate divisions and build separate private dwellings on each division, thus making three dwellings on one lot, although the said previous recorded restrictions provided in part that "no more than one (1) single private dwelling shall be erected on any lot".

The case was tried to the court without a jury with all parties appearing, after which a "take nothing" judgment was rendered against appellant, W. W. Witte, denying him any recovery and validating that part of the restrictions in question. Appellant perfected an appeal to the Dallas Court of Civil Appeals of the Fifth Supreme Judicial District and the same was transferred to this Court by the State Supreme Court in equalizing the dockets.

The record reflects that G. L. DuBose was the sole owner of the entire tract of land in question on May 26, 1947, when he on said date filed a plat of it as Royal Crest Addition, dividing the tract into four different blocks with 59 separate lots contained therein, establishing streets and alleys fully

shown therein and recorded the same in Volume 11, Page 221 of the Plat Records of Dallas County. Thereafter on June 5, 1947, G. L. DuBose executed and filed restrictions governing the use of Royal Crest Addition "as per map and plat thereof recorded in Volume 11, Page 221 of the Map Records of Dallas County" which instrument imposed and placed upon each of the lots in the said Addition certain restrictions which were covenants running with the land and some of which are later herein copied and discussed. The said restrictions were likewise recorded in Volume 11, Page 222A–B–C of the Plat Records of Dallas County. Subsequently a majority of the lots in Royal Crest Addition were sold to individuals, who have placed improvements thereon. In March of 1951 appellee, Dr. F. J. Sebastian, bought Lot 4, Block 2–5500, Royal Crest Addition, known as 6044 Royal Crest Drive, which is across the street from appellant's lot in question. Doctor Sebastian paid $4,000 for the said lot and constructed thereon his family residence at a cost of approximately $63,000. Appellee, Mrs. Mary Jane Chambers, bought Lot 2 in Block 1–5500, Royal Crest Addition, which is adjacent to appellant's lot in question. On August 26, 1952, appellant, W. W. Witte, bought his lot in question from Wm. J. Bond. On the following day, August 27, 1952, without the knowledge or consent of appellee, Dr. F. J. Sebastian, a replat of Lot 1, Block 1–5500, Royal Crest Addition, appellant's lot here in question, was filed in Volume 18, Page 413 of the Plat Records of Dallas County by Wm. J. Bond, thereby dividing the said lot into three separate divisions, designated as "Lots 1–A, 1–B and 1–C", contrary to and inconsistent with the original restriction provisions previously filed by G. L. DuBose.

Thereafter on October 10, 1952, appellant filed this suit, alleging himself to be owner of the said "Lots 1–A, 1–B and 1–C" of the said Block in the said Addition and that the said lots were shown "as Lot 1" of the said Block in the said Addition by the (G. L. DuBose) map and plat filed and recorded in Volume 11, Page 221 of the Dallas County Plat Records; that each of the named de-fendants owned lots, respectively, in the Royal Crest Addition and a controversy had arisen between himself and the named defendants concerning his (appellant's) proposal to erect three separate dwellings on the lot he purchased from Bond, the same being Lot 1, Block 1–5500 of the said Addition, the said three proposed dwellings to be built one on each lot (that is "Lots 1–A, 1–B and 1–C") as more recently replatted by Bond. Appellant further alleged, in effect, that the dwellings would all be erected in conformity with the provisions and restrictions set out in the DuBose map and plat originally filed and recorded except that he proposes to build three dwellings on one lot according to the DuBose plat and map, rather than the limit of one dwelling therein specified. However, he likewise alleged, in effect, that there were no provisions in the DuBose restrictions that prohibited replatting of his said Lot 1 for the purpose of building more than one dwelling thereon.

Appellee, F. J. Sebastian, answered, joining issues with the appellant and pleading the contents of the DuBose restrictions in bar of appellant's proposal to build three dwellings on one lot across the street from the Sebastian home. The case was tried with the result previously stated and the trial court made findings in its judgment consistent with its disposition made of the case. In his appeal appellant presents three points of error raising only the one material issue previously herein stated.

The DuBose restrictions are too lengthy to reproduce here in full. We shall therefore set forth only the material portions thereof as follows to wit:

"I, G. L. DuBose, * * * do hereby impose and place, and by these presents have imposed and placed, upon each of said lots in the following described Restrictions, each of which shall be a covenant running with the land as follows:

"1.

"These Covenants shall be binding on all parties and all persons claiming under them until the 5th day of June, 1967

at which time said Covenants shall be automatically extended for successive periods of ten (10) years unless by a vote of a majority of the then owners of the lots, it is agreed to change said Covenants in whole or in part. * * *

"3.

"No improvements other than private residences and necessary servants houses, garages and outhouses, shall be erected in said Addition, *and no more than one (1) single private dwelling shall be erected on any lot*. All dwellings erected shall be built for and occupied *as single family private dwellings* and not as duplexes, apartments, or any other form of multiple unit of occupancy, and not for business use. * *

"10.

"*No buildings other than the main residential dwellings, garages and servants quarters shall be built on any of the lots in said Subdivision*. * * *

"13.

"The owners of the fee simple title of not less than two-thirds (⅔) of the lots in this Addition, as more fully shown in the Map or Plat Records recorded in Volume 11, Page 221 of the Map or Plat Records of Dallas County, Texas, *may change, alter or abolish all or any part of the stipulations*, restrictions, conditions, covenants and charges herein contained as herein provided *at any time after 20 years from this date*, by making a written declaration, duly acknowledged and recorded in the Deed Records of Dallas County, Texas, in which event such restrictions, stipulations, conditions and covenants shall terminate and be of no further force and effect. * * *

"14.

"The above stipulations, restrictions, conditions and covenants shall inure to the benefit of and be *binding upon* and *enforceable by* the original purchasers *and subsequent grantees of any of said lots,* and the failure by the grantor, or by any owner of any lot, to enforce any of the restrictions, stipulations, conditions and covenants herein contained, shall in no event be deemed a waiver of the right to do so." (Emphasis ours.)

■ In support of his replat and his contentions here made, appellant obtained and filed releases concerning the original Du-Bose restrictions from a number of the property owners in Royal Crest Addition. However, some of the property owners most affected, particularly appellee, Doctor Sebastian and some others, did not sign such a release. The terms of the DuBose restrictions provide in part that the same "shall inure to the benefit of and be binding upon and enforceable by" the owner and subsequent grantee of any of the said lots. The courts have also held that in a case such as this " 'such restrictions may be enforced by any grantee against any other grantee' ". Faubian v. Busch, Tex.Civ.App., 240 S.W.2d 361, 367; Plaster v. Stutzman, Tex.Civ. App., 8 S.W.2d 750, and other authorities there cited.

The record further reveals that 80% of the lots in the Royal Crest Addition had homes built on them when appellant bought his said lot; that appellee Sebastian objected to appellant subdividing his Lot 1 of the said Block in the said Addition into three separate tracts and building a residence on each tract contrary to the original DuBose restrictions and that he told appellant so before appellant closed the deal for the purchase of his lot. Appellant so testified and he further testified that he knew of two other property owners in the said Addition who objected also—one next door to Sebastian's lot and another further down on the corner. He likewise testified that he had read the DuBose restrictions and was familiar with them at the time he bought his said lot and that he planned to build three dwellings on his lot and sell them for a profit. Appellant's deed for the purchase of his said lot on August 26, 1952, provides in part that "This conveyance is made subject

to any and all restrictions of record affecting the said property". Appellant had both constructive and actual knowledge of the DuBose restrictions of record and referred to in his deed of purchase.

The Supreme Court of Texas in the case of Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, 498, passed on restrictions very similar to those filed by G. L. DuBose on the Royal Crest Addition. It there laid down the rules of law governing such restrictions or covenants in the following language:

"The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. (Citing numerous authorities).

"The correct rules that govern covenants of the character set out in the deeds to this restricted district are well stated by Judge Higgins in the case of Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270, as follows:

" 'The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. * *'

"It is perfectly clear that it is lawful for districts with restrictions of this nature to be created, and also that each

purchaser has the right to rely on and to enforce those restrictions."

This case has since been many times cited and the rules of law there announced consistently followed. In support of such rules, we likewise cite the following more recent cases: Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476; Fischer v. Reissig, Tex. Civ.App., 143 S.W.2d 130; Crump v. Perryman, Tex.Civ.App., 193 S.W.2d 233; Braswell v. Woods, Tex.Civ.App., 199 S.W.2d 253; Benbow v. Boney, Tex.Civ.App., 240 S.W.2d 438; Cuiper v. Wolf, Tex.Civ.App., 242 S.W.2d 830.

The record further reveals that it was not the custom of the City Planning Commission of Dallas to give notice to adjacent property owners of its intention to resubdivide city property and that no such notice was given appellee Sebastian or the other property owners of Royal Crest Addition when the said Commission examined and approved the W. J. Bond replat of appellant's lot in question. However, it was shown that by approving such a replat by the said Commission, it only meant that such a replat conformed to the city zoning requirements.

■ Although it appears from the record and the authorities cited that appellant is bound by the DuBose restrictive covenant of record, particularly since he purchased his lot in question subject thereto, it has been held that valid restrictive covenants cannot be abrogated by subsequently attempting to replat, even when the replat has the approval of the City Planning or Zoning Commission. Faubian v. Busch, Tex. Civ.App., 240 S.W.2d 361; Spencer v. Maverick, Tex.Civ.App., 146 S.W.2d 819, and other authorities there cited.

■ An examination of the entire DuBose restrictive covenant reveals no uncertainties, inconsistencies or ambiguities, particularly in that part of the provisions affecting the issues here involved. A section therein contained also provides that in case any part thereof is held invalid, such will not affect the remainder of it. Under the record it appears that the trial court was justified in finding and concluding that the

DuBose restrictions were valid and that appellant and all other property owners in Royal Crest Addition were bound by the said restrictions prohibiting the building of more than one dwelling on each lot as platted and restricted by DuBose and that the attempt to replat appellant's lot in question did not alter or change the rights and obligation of the parties to this action. Butler v. Southwest Dairy Products Co., Tex.Civ.App., 146 S.W.2d 1036.

Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.