**FIRST STATE BANK OF CORPUS CHRISTI, Appellant,**

v.

**T. M. JAMES, Appellee.**

No. 633.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 9, 1971.

Sorrell, Anderson, Sorrell & Atwill, James R. Sorrell, Jr., Corpus Christi, for appellant.

Philip A. Schraub, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is an injunction case that concerns the enforcement of a "private residential use only" subdivision restriction. T. M. James, as plaintiff, sued the First State Bank of Corpus Christi, as defendant, to enjoin the proposed use of Lot 13, Block 23, Del Mar Addition, City of Corpus Christi, Texas, as a parking lot or driveway into a parking area owned by defendant.

The trial was before a jury which answered special issues favorably to plaintiff. Judgment was entered permanently enjoining the defendant from using the lot "for any purpose except private residential use only, for so long as said restrictions remain in force and effect." The bank has duly and timely perfected this appeal. We affirm.

Appellant is the owner of Lot 13, in Block 23 Del Mar Addition. Appellee is the owner of Lot 14, in Block 23, of the addition. These lots are adjoining and both were limited by the subdivision restrictions to "private residential use only."

The land comprising Del Mar Addition was subdivided into lots and blocks and a plat thereof was filed for record in the office of the County Clerk of Nueces County, Texas, in 1925. A. L. Wright, Trustee, the owner and subdivider of the addition, executed an instrument on December 2, 1925, denominated "Declaration of Limitations and Restrictions". The document was filed for record on December 3, 1925, and was introduced in evidence at the trial of this case. The restrictions were by their own terms in force for a term of 25 years from date thereof, with the provision that they could be extended by a majority vote of the lot owners in the addition voting at an election to be called and conducted in accordance with certain stated requirements and procedures. On May 6, 1950, such an election was held, and a majority of the 427 lot owners voting at the election, voted to extend and continue the restrictions for a period of 25 years from and after December 2, 1950.

The subdivision restrictions were made expressly applicable to subsequent contracts

of sale, deeds, etc., affecting or transferring the title to any real property in the addition. It was further expressly provided that the terms of the instrument shall extend to "all who are and may become owners of lots in Del Mar Addition."

Originally, Del Mar Addition was platted so as to permit a business community composed of Blocks 21, 22 and 36, that became known as "Six Points", and a residential community composed of the remainder of the blocks therein. We incorporate a sketch of a portion of the addition. It is not an exhibit but does show the location of the original "Business Section" and the location of the lots and blocks, together with the streets bounding same, that are pertinent to this appeal. The sketch, which is not drawn to scale, is as follows:

[A4457]

Block 23 consists of 30 lots. Lots 1 to 15 face south on Clifford Street. Lots 16 to 30 face north on Palmero Street. Each lot has a 50 foot frontage on the respective streets and goes back a depth of 135 feet.

Block 24 consists of 32 lots. Lots 1 to 16 face south on Cole Street. Lots 17 to 32 face north on Clifford Street.

At the outset, appellant contends that there is no evidence in the record that es-

tablishes or supports any general plan or scheme of restriction in Del Mar Addition. The first and second points of error state that the trial court erred in impliedly finding (a) that such a general plan or scheme had existed in the subdivision, and (b) that appellee relied on the residential use restrictions. These points cannot be sustained.

The question of no evidence is one of law and judicial review of such question imposes upon us a duty to consider only the evidence favorable to the fact finding and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

Our Supreme Court, in Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164, 166 (1948), where the question before the Court was whether as a matter of law there was any evidence to sustain the judgment of the district court, announced the rule:

" * * * In determining this question, we must presume that the evidence supports not only the express findings made by the district court, but also any omitted findings which are necessary to support the judgment. * * * "

That rule also applies to implied findings by the trial court, when implied findings are necessary to sustain the judgment. Here, the judgment was entered pursuant to jury findings. Appellant did not request that these matters be submitted to the jury for fact determination.

A general plan or scheme must be proved by the party seeking to enforce the restriction. Massengill v. Jones, 308 S.W. 2d 535 (Tex.Civ.App., Texarkana, 1957, wr. ref. n. r. e.); 16 Tex.Jur.2d, Covenants, etc., § 129, p. 36. Appellee met the burden of proof as is apparent by a brief review of the evidence dealing with this point.

With the growth and development of the City of Corpus Christi, conditions in some areas of Del Mar Addition changed to the extent that some of the lots were no longer best suited for residential purposes. On March 31, 1951, in Cause No. 44343-C, the private residential use only restrictions as to the north half of Block 35, Del Mar Addition, were cancelled by decree of a District Court of Nueces County, Texas. And, on July 10, 1968, in Cause No. 96553-C, such restrictions insofar as they affected the west 10 feet of Lot 9, and all of Lots 10, 11 and 12, Block 35, (in the south half of the block) were removed by similar decree. Neither appellant nor appellee were parties to either of these two cases.

In another case, the 105th District Court of Nueces County, Texas, in Cause No. 84293-D, on December 18, 1964, entered judgment that removed the residential restrictions as to (a) Lot 2, and Lots 4 to 20, in Block 20; (b) Lots 1, 2, 3, 5, 7, 11, Lots 15 to 26, and Lots 28 to 30, in Block 23; and (c) Lots 17 to 22, and Lots 24 to 32, in Block 24, Del Mar Addition. Appellant was one of the plaintiffs therein. Appellee was not a party thereto, was not served with citation, made no appearance in the case, and did not learn of the suit until June or July, 1969.

In addition to the above cases, there is also in evidence the pleadings and judgment in Cause No. 80181-B, 117th District Court of Nueces County, Texas, wherein the court cancelled certain limitations on the types of business that could be conducted on some of the business lots in Blocks 21, 22, 35 and 36 of the addition. Appellant was a plaintiff therein; appellee was not a party thereto.

The allegations, findings, recitations and judgments in each of the above mentioned four cases are indicative that the general plan or scheme of restrictions as promulgated by the original owner and subdivider had been implemented at the time suit was filed. Copies of these court proceedings are in evidence. There was a cumulative total of about 109 plaintiffs and

defendants in the four cases, all of whom owned lots in the addition.

Deeds incorporating the restrictions were executed after the effective date of the restrictions. The deed to James C. James and wife, Mary M. James (parents of appellee), dated January 11, 1951, conveying Lot 14, Block 23, is made subject to the restrictions. Likewise, in the several deeds conveying Lots 13, 18 and 19, Block 23, to appellant, it is recited in each deed that the conveyance is made subject to all restrictions that were then in effect.

We do not believe that the case of Gibbs v. Garden Oaks Board of Trustees, 459 S. W.2d 478 (Tex.Civ.App., Houston 14th, 1970, wr. ref. n. r. e.), relied upon by appellant, is controlling of appellant's first point. The evidence presented by the record in that case is different from that presented in the instant case. The two cases are distinguishable on the facts.

The recording of the restrictions, the deeds executed as being subject to the restrictions, the holding of the election to extend the restrictions, the litigation above referred to, and the testimony of the witnesses show that a large number of lot owners knew of, looked to, were bound by, complied with, and relied upon the restrictive limitations affecting Del Mar Addition. The only logical inference that can be drawn from the evidence adduced at the trial is that there had been in existence for a long time prior to the institution of this suit a general plan of restriction in the addition.

■ Upon any violation of the restrictions it was provided "the party so violating shall become subject to legal injunction by A. L. Wright, Trustee, or by the owner of any lot in Del Mar Addition." It has been repeatedly held that in a case of this character such restrictions may be enforced by any lot owner against any other lot owner. Plaster v. Stutzman, 8 S.W.2d 750, 753 (Tex.Civ.App., Galveston, 1928, n. w. h.) and the cases therein cited; Witte v. Sebastian, 278 S.W.2d 200 (Tex.Civ.

App., Amarillo, 1953, n. w. h.). Appellee, a lot owner in Del Mar Addition, was authorized to bring suit. There is ample evidence to support the implied findings by the trial court. Appellant's first and second points do not present reversible error, and they are, accordingly, overruled.

In its third point of error, appellant contends that the trial court erred in holding that "the 'private residential use only' restriction in the immediate area of the James' property had not been abandoned or waived".

Appellee's parents purchased Lot 14, in Block 23, in 1951. It was acquired by appellee in 1959 by deed of gift from his mother. The premises have been used exclusively for residential purposes since prior to 1951.

When appellee's parents purchased their lot, the adjoining Lot 15, Block 23, was owned by Dr. Pulliam, who lived there and maintained a dental office in his home. Lots 16 and 17, Block 23, were vacant lots. There was a residence building on Lot 18, Block 23. These four lots were purchased by appellant in 1955–1956. Lot 19 was purchased by appellant in 1965. The two residences were torn down and appellant paved Lots 15, 16, 17 and 18 and made them into a parking area during the time that appellee's parents owned Lot 14. The lots were used solely for a parking area for the use and convenience of appellant's customers and of the patrons of the merchants in Six Points. Neither the parents of appellee nor appellee voiced an objection to any use that was made by any one of these lots.

Offices have been maintained in two residences located in Block 24, Del Mar Addition, for a long time before this suit was filed. The owner and occupant of Lot 17, Block 24, established and maintained a real estate office in his residence built on this lot. This real estate office has been in operation continuously since sometime prior to 1951. The house was used as a home until about two years before this suit was

filed. The owner of Lot 18, Block 24, was living in a house located thereon and was maintaining a dental office in the house when Lot 14 was purchased by appellee's parents. The premises were still being used as a home and as a dental office at the time this action was instituted. Neither appellee's parents nor appellee complained about the offices being maintained in the homes situated on the respective lots. The evidence does not reveal the extent or volume of the business, if any, that was conducted by either of the dental offices or by the real estate office. Apparently, from outward inspection at any given time, there was little that would mark the residence as being business establishments.

In construing similar subdivision restrictions the courts have held that the operation of a day nursery, of a beauty shop, or of a doctor's office in a home located on a tract subject to residential restrictions does not amount to a material violation of such restrictions. Such activities have been held to be merely incidental to the use of the premises as a family residence. Davis v. Hinton, 374 S.W.2d 723 (Tex.Civ.App., Tyler, 1964, wr. ref., n. r. e.); Burkhart v. Christian, 315 S.W.2d 668 (Tex.Civ.App., Waco, 1958, wr. ref., n. r. e.); Baker v. Brackeen, 354 S.W.2d 660 (Tex.Civ.App., Amarillo, 1962, n. w. h.).

The Supreme Court in Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506, 508 (1944), said:

"* * * While a lot owner in a restricted district may under certain circumstances, by acquiescence in violations of restrictions as to some lots, waive his right to insist upon compliance as to others, the settled rule is that he is not precluded from enforcing a restriction against an owner whose violation of it materially affects him, by failing to complain of another's violation which does not materially affect him in the enjoyment of his property or which is merely trivial."

■ It is the settled law of this State that the mere fact that the complaining party did not object to previous violations of the restrictions, particularly where they did not then materially affect the enjoyment of his land in the restricted area, will not prevent him from maintaining a suit for injunctive relief to prevent a substantial violation which would materially affect his own premises. Ragan v. Mosher, 225 S.W.2d 438 (Tex.Civ.App., Galveston, 1949, wr. ref. n. r. e.); Eakens v. Garrison, 278 S.W.2d 510, (Tex.Civ.App., Amarillo, 1955, wr. ref. n. r. e.); Barham v. Reames, 366 S.W.2d 257, 259 (Tex.Civ. App., Fort Worth, 1963, n. w. h.).

The evidence does not show that the maintenance of the offices in the homes materially affected the use and enjoyment of any lot in the residential section as a home. Under the holdings of the foregoing cases, before an alleged violation of the subdivision restrictions can amount to a waiver, it must be shown that the violation materially affected the use and enjoyment of the properties as residences. This was not done in this case.

■ Appellant is in no position to contend that appellee waived the residential restriction when he did not complain of the parking lot operations. Appellant admits in his brief that this use was not permitted by the subdivision restrictions. It is our opinion that equity in such situation is with appellee, who insists that the original purpose of the restrictions be carried out with respect to his lot. Equity is not with appellant, who has violated the restriction in the past on other lots and now seeks to again violate the restrictions on an additional lot. Bethea v. Lockhart, 127 S.W.2d 1029 (Tex.Civ.App., San Antonio, 1939, wr. ref.); Lebo v. Johnson, 349 S.W.2d 744 (Tex.Civ.App., San Antonio, 1961, wr. ref. n. r. e.); Scaling v. Sutton, 167 S.W.2d 275 (Tex.Civ.App., Fort Worth, 1942, wr. ref. w. m.).

We hold that since the operations of the dental offices and the real estate office

were merely incidental to the use of each lot as a family residence, the use so made of these premises did not amount to a waiver or abandonment by appellee of the residential restrictions. Under the circumstances, we further hold that the failure of appellee to complain of the parking lot operations conducted by appellant on Lots 15, 16, 17 and 18, Block 23, did not constitute a waiver or abandonment of his right to enjoin a proposed violation on Lot 13, Block 23.

Under Special Issue No. 3, the jury found that there was no material violation of the private residential use only by any person other than appellant during the time that appellee owned his lot that materially affected the use of his lot. In answer to Special Issue No. 5, the jury determined that a substantial number of lot owners had not permitted or acquiesced in material violations of the private residential use only restrictions in the area of appellee's property. There is sufficient evidence to support these fact findings. Appellant's third point is overruled.

Appellant, by its fourth point, asserts that "the court erred in holding that there was not a change of conditions in the area of the James' property to the extent that a person within that area could still achieve, substantially, the benefits which the restrictions sought to give."

There are situations that require relief from the enforcement of restrictions and restriction convenants. This Court, in Simon v. Henrichson, 394 S.W.2d 249, 254 (Tex.Civ.App., Corpus Christi, 1965, wr. ref. n. r. e.), enumerates and discusses a number of factors bearing on such issue. Some of them are present in this case.

Block 35 is outside of any business area neighboring Lots 13 and 14, Block 23. The changing conditions that resulted in the cancellation of the residential restrictions on most of the lots in Block 35 has not affected in a material way the residential use of Lot 14, in Block 23. Block 35

is between S. Alameda and S. Staples Streets, two heavily travelled streets in Corpus Christi. There is sufficient evidence in the record to show that the present business area of Six Points, for the most part, is found along these streets in areas between the two streets, and along a portion of Ayers Street. There is a conflict in the evidence as to whether the business area presently extends to the lands involved in this appeal. Appellant's expert witness testified, in substance, that all of Blocks 20, 23 and the north half of 24 is now business property. Appellee's expert witness testified that (a) there is no business activity east of a line about 130 feet east of Six Points, except for a few offices and a dress shop in homes that are far removed from Lots 13 and 14, Block 23; (b) the best and highest use of appellee's lot is residential; (c) the lot does not have the quality for a commercial piece of property; (d) the lot is not recognized in the real estate market as being business property; (e) the traffic problems and lack of parking facilities prohibit the establishment of businesses along either Clifford or Palmero Streets; and, (f) there has been no general abandonment of the subdivision for residential purposes.

We are particularly mindful of the finding made by the trial court in the judgment rendered in Cause No. 84293–D, that the subdivision restrictions, dated December 2, 1925, "should be enforced as to all of the Del Mar Addition, save and except the lots hereinafter described located in Blocks 20, 23 and 24 of said Del Mar Addition." The lots later described in the judgment as being released from the residential restrictions do not include either Lot 13 or Lot 14, in Block 23, of the addition. The record is devoid of the establishment of any business enterprise on any lot in Blocks 20, 23 and 24 since judgment was rendered on December 18, 1964. Except for the lots used for parking purposes and possibly one or two lots in Block 20, the actual and physical use of the lots in these Blocks from date of judgment to time of trial has been residential.

■ The fact that over the years some of the residence structures have been demolished and the lands on which they once stood are now vacant is not evidence of such a change that warrants relief against subdivision restrictions. The granting of special use permits and the zoning of property for apartment house purposes does not abrogate the original plan or scheme for the addition, nor does such action by regulatory agency terminate, cancel or remove the subdivision restrictions. Lebo v. Johnson, supra, 349 S.W.2d 744 (1961, wr. ref. n. r. e.); Faubian v. Busch, 240 S.W.2d 361 (Amarillo, Tex.Civ.App.1951, wr. ref. n. r. e.).

In determining whether a residential use only restriction should be enforced by a court of equity, our Supreme Court in Cowling v. Colligan, 158 Tex. 458, 312 S. W.2d 943 (1958) gave us certain guidelines to follow. We quote the following statement from the opinion:

"A court may not refuse to enforce a residential-only restriction against a particular lot on the sole ground that a change of conditions has rendered the lot unsuitable for residential purposes and it would therefore be inequitable to enforce it. The equities favoring the particular owner is only one facet of the judicial inquiry. * * * "

The jury, in response to Special Issue Nos. 1 and 2, found that the proposed use by appellant of its Lot 13 is a material violation of the private residential use only restrictions and that such proposed use materially affects adversely the value or use of appellee's property for private residential purposes. They answered Special Issue No. 10 that there had not been a change of conditions in the area of appellee's property to the extent that it is no longer possible for a person within said area to secure in a substantial degree the benefits sought to be realized through the private residential use only restriction.

■ It has long been the law in this State that where a jury's answers to special issues are sufficient to form the basis of a judgment, and there is no jury misconduct, an appellate court will not disturb the verdict of the jury where there is sufficient evidence of probative force to support the same, viewing the evidence in the light most favorable to the successful party in the trial court and indulging every legitimate conclusion that is favorable to him. State v. Zaruba, 418 S.W.2d 499, 502 (Tex.Sup.1967); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957); Etter v. Von Sternberg, 244 S.W. 2d 321 (Tex.Civ.App., Galveston, 1951, wr. ref. n. r. e.). In view of the jury findings, the point cannot be sustained.

■ The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. There is considerable conflicting testimony in the record as to whether there had been the change of conditions that is argued by appellant. The jury resolved that dispute in favor of appellee and against appellant. The issue has thus been determined and this case is settled so far as it is affected by that disputed issue of fact. The evidence supports the answers made by the jury. If the facts will support with reason a verdict in favor of either appellant or appellee, the decision to be made rests exclusively with the jury. Benton v. Wheless Drilling Company, 440 S.W.2d 373 (Tex.Civ.App., Houston 1st 1969, wr. ref. n. r. e.); Tuchin v. Chambers, 439 S.W.2d 849 (Tex.Civ.App., Fort Worth, 1969, wr. ref. n. r. e.); Petroleum Producers Co. v. Stolley, 137 S.W.2d 207 (Tex.Civ.App., San Antonio, 1939, wr. dism'd judg. corr.). Appellant's fourth point is overruled.

Appellant, by its fifth, sixth and seventh points of error, complains of the submission of Special Issue No. 3, the interlineation by the trial judge in his own handwriting of the hereinafter shown words in this issue, the remarks made by the trial court in connection with the interlineation, the failure to comment on or emphasize the word "adversely" that had been interlined by typewriting in Special Issue No. 2,

and the definition of the person who has a right to complain.

Special Issue No. 3, as originally typed, read as follows:

"Do you find from a preponderance of the evidence that there have been material violations by parties other than the Bank of the private residential use only restrictions, as said restrictions applied in December of 1925, in the area of the T. M. James property which materially affect said T. M. James property?

Answer: 'Yes' or 'No'.

We, the Jury, answer: ____"

The trial judge, in his own handwriting interlined the words "during the time when said T. M. James owned said property", so that the issue as submitted to the jury read:

"Do you find from a preponderance of the evidence that there have been material violations by parties other than the Bank of the private residential use only restrictions, as said restrictions applied in December of 1925, in the area of the T. M. James property during the time when said T. M. James owned said property, which materially affect said T. M. James property?

Answer: 'Yes' or 'No'.

We, the Jury, answer: ____"

The jury answered "No" to the interlined issue.

 Appellant contends that the trial court, by submitting Special Issue No. 3, precluded the jury from considering the violation of the restrictions by appellant. The argument is made in support of appellant's defenses of laches, waiver, acquiescence and abandonment. It is argued that appellant's admitted violations should have been considered by the jury. We do not agree. It was said in Lebo v. Johnson, supra, "Appellees can gain no advantage by their own wrongs". The statement is applicable here. The trial court correctly limited the jury's consideration to the violation of the restrictions, if any, to persons other than appellant. Allen v. Winner, 389 S.W.2d 599 (Tex.Civ.App., Houston 1965, wr. ref. n. r. e.). Appellant's fifth point is overruled.

The jury was instructed in Special Issue No. 5, as follows:

"You are further instructed that to have the right to complain of a neighbors' use of their property, the complaining party must be an owner or occupier of property in Del Mar Addition."

This instruction does nothing more than correctly state the law. Moreover, the answer to Special Issue No. 5 was conditioned on an affirmative answer to Special Issue No. 4 that was conditionally submitted on an affirmative answer to Special Issue No. 3. The jury answer of "No" to Special Issue No. 3 precluded an answer to Special Issues Nos. 4 and 5. Appellant's sixth point is overruled.

 In our opinion the complaint that the trial court failed to comment on or emphasize the word "adversely" that had been interlined in Special Issue No. 2 is without merit.

 The trial court, following the objection made by appellant after the jury had been advised of the interlineation made in Special Issue No. 3, overruled the objection, and said to the jury:

"I am going to read No. 3 again and say this, the only reason I said what I did was the interlineation is in my handwriting and I'm a little bit fearful maybe you couldn't read it. I specifically want to instruct you that no particular word in this Charge is any more important than any other word, whether in fountain pen or by typewriter, and that the Charge should be read and considered as a whole."

The action by the trial court in this instance did not constitute reversible error.

The error, if any, was harmless. Under the circumstances, the comments by the trial judge did not constitute an oral charge. Such comments did not violate Rule 275, Texas Rules of Civil Procedure. Appellant was not injured or prejudiced thereby. Nothing that was said could be held to be a comment upon the evidence. Texas State Highway Department v. Reeves, 161 S.W.2d 357, 360 (Tex.Civ. App., Beaumont, 1942, wr. ref.). Appellant's seventh point is overruled.

The judgment of the trial court is affirmed.